UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOAH MORRIS,

        Plaintiff,                                   Hon. Robert J. Jonker

v.                                                  Case No. 1:23-cv-751

RESURGENT CAPITAL SERVICES,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Pro se Plaintiff Noah Morris filed a complaint against Defendant Resurgent Capital Services (RCS) on or about June 6, 2023, in the Small Claims Division of the State of Michigan 63rd Judicial District Court, alleging that RCS violated several provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (ECF No. 1-1.) RCS removed the case to this Court on July 13, 2023, on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. (ECF No. 1.) On July 20, 2023, Morris filed an amended complaint. (ECF No. 6.) RCS filed its answer to the amended complaint on July 28, 2023. (ECF No. 9.)

Presently before me is RCS's Motion for Judgment on the Pleadings (ECF No. 12), which is fully briefed and ready for decision. (ECF Nos. 14 and 15.) For the reasons that follow, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion but also **GRANT** Morris leave to file an amended complaint to allow him an opportunity to cure the pleading deficiencies in his FDCPA claim.

## I.  Background

Morris alleges that, at some unspecified time, an unknown third party incurred a debt to Credit One, which was subsequently sold, assigned, or transferred to LVNV Funding. In turn, LVNV Funding retained Defendant RCS to collect the debt. (ECF No. 6 at PageID.38.) Morris alleges that he does not have a contract with RCS, and RCS is not the real party in interest. On January 11, 2023, Morris received correspondence from RCS stating that he would be subjected to legal action unless he paid the alleged debt. Morris apparently had several conversations with RCS representatives, in which he informed them that he did not incur the debt, that it was "incurred as a result of identity theft/fraud," and that he had no intention of paying it. (*Id.*)

On February 10, 2023, Morris filed a Consumer Financial Protection Bureau (CFPB) complaint against RCS and requested that RCS validate the debt. In a phone call with an RCS representative in late February 2023, Morris expressed his concern that the account did not belong to him. In response, RCS's employees sent him three letters, all dated February 24, 2023, and containing nearly the same information. One of the letters stated that RCS could not validate the debt. (*Id.* at PageID.39.) On April 15, 2023, Morris sent a letter to RCS requesting that it cease all communication with him as required by 15 U.S.C. § 1692c(c), but RCS continued to contact him. On May 10, 2023, Morris filed a complaint with the Michigan Attorney General and a CFPB complaint against LVNV Funding regarding RCS's violations. On May 20, 2023, Morris sent RCS a final affidavit concerning its FDCPA violations and abusive practices. On May 25, 2023, Morris received an answer to his second CFPB complaint. Under duress, he contacted the RCS compliance agent who answered the complaint. Morris explained his situation, and the compliance officer instructed him to fax his recent reports to her. After Morris faxed her documents, the furnished information was deleted from his credit report. (*Id.* at PageID.40.)

## II.  Motion Standard

In deciding a motion under Rule 12(c), a court applies the same standard applicable to motions under Rule 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the allegations therein in a light most favorable to the plaintiff to determine whether they state a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). When considering a Rule 12(b)(6) motion, the court must dismiss a claim unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

Because Morris is proceeding pro se, the Court must construe his pleading more liberally than it does for pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf" *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). To require otherwise "would not only strain judicial resources . . . but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

#### A. Failure to State a Claim

To state a claim for violation of the FDCPA, a plaintiff must allege that: (1) he is a "consumer" as defined by the Act; (2) the debt arises out of a transaction which is "primarily for personal, family or household purposes;" (3) the defendant is a "debt collector" as defined by the Act; and (4) the defendant violated one of the provisions of the Act. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)). RCS does not dispute that Morris adequately alleges that he is a "consumer" and that RCS is a "debt collector" as defined by the FDCPA. (ECF No. 6 at PageID.38.) RCS's motion concerns only the second element—the nature of the debt.

The FDCPA defines "debt" as:

4

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). Establishing that the alleged debt satisfies the FDCPA's definition of "debt" is "[a] threshold requirement for application of the FDCPA." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir. 1987); *see also Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004) ("Because not all obligations to pay are considered debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the dispute involves a 'debt' within the meaning of the statute.") (citing *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001)). The plaintiff has the burden to establish that the obligation at issue was incurred "primarily for personal, family, or household purposes." *Currier v. PDL Recovery Grp., LLC*, No. 14-12179, 2017 WL 712887, at *13 (E.D. Mich. Feb. 23, 2017) (citing *Horton v. Trans Union, LLC*, No. 12-2072, 2015 WL 1055776, at *6 (E.D. Pa. Mar. 10, 2015)). "The FDCPA does not apply to debts incurred for business purposes." *Id.*

Citing *Evenson v. Palisades Collection, LLC*, No. 2:13-cv-1226, 2015 WL 3466936 (S.D. Ohio June 1, 2015), RCS contends that district courts within the Sixth Circuit have dismissed FDCPA claims—like Morris's claim—in which the plaintiff alleges identity theft and disclaims all knowledge concerning the debt, including the reason why it was incurred. (ECF No. 12 at PageID.64.) *Evenson* is the only identity theft case RCS cites, and it is not particularly helpful at this juncture because it was decided in the context of a summary judgment motion. *Id.* at *2. While the court held that the plaintiff's evidence failed to create a genuine issue of material fact that the alleged debt was primarily for personal, family, or household purposes, *id.* at *4–6, it had no occasion to decide whether the plaintiff's complaint allegations satisfied the *Twombley*/*Iqbal* pleading standard.

5

RCS also contends, correctly, that district courts within the Sixth Circuit and elsewhere have held that to plead a viable FDCPA claim, a plaintiff must allege facts supporting that the debt was incurred primarily for personal, family, or household purposes. *See Walker v. Lyons, Doughty & Veldhuis, P.C.*, No. 1:18-cv-513, 2019 WL 1227792, at *2 (S.D. Ohio Mar. 15, 2019) (observing that "the vast majority of courts have found that the conclusory statement that a debt was incurred for primarily personal, family, or household purposes is insufficient to state a claim under the FDCPA") (citing, among others, *Garcia v. Primary Fin. Servs.*, 605 F. App'x 418, 418–19 (5th Cir. 2015), and *Piper v. Meade & Assocs., Inc.*, 282 F. Supp. 3d 905, 912 (D. Md. 2017)). However, none of the cases RCS cites for this proposition involved a plaintiff's alleged lack of knowledge about the details of the debt due to identity theft. *See Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *1-2 (W.D. Mich. July 31, 2023) (plaintiff alleged FDCPA violations in connection with loan that he obtained from payday lender); *Camaj v. Makower Abbate Guerra Weggner Vollmer PLLC*, No. 19-cv-10179, 2019 WL 6037597, at *5–6 (E.D. Mich. Nov. 14, 2019) (alleging FDCPA violations arising out of the defendant's attempts to collect association assessments for the plaintiff's condominium); *Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 766–67 (S.D. Ohio 2013) (alleging FDCPA violations in connection with a foreclosure on the plaintiffs' property).

In *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296 (S.D. Fla. 2016), the court addressed the defendant's argument that the plaintiff could not show that the debt at issue was covered by the FDCPA because she disclaimed any knowledge of the eBay account that gave rise to the debt. The defendants essentially argued that an identity theft victim who disclaims knowledge of the underlying debt could never maintain an FDCPA claim, while the plaintiff argued that evidence that a plaintiff was a victim of identity theft is alone sufficient to establish

6

the existence of a "debt." *Id.* at 1304. Citing the tension between the FDCPA's purpose of providing redress to "'individuals subjected to collection efforts for obligations they are falsely alleged to have owed,'" *id.* at 1305 (quoting *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 924 (E.D. Cal. 2014), and the statutory definition of "debt," the court rejected both parties' arguments. *Id.* Based on these considerations, it determined that, "while a plaintiff's assertion of identity theft or mistaken identity *alone* is not sufficient to establish a 'debt,' it *is* a factor to be considered." *Id.* at 1306 (citing *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 336 n.7 (4th Cir. 2012)). The court thus concluded that "a victim of identity theft or mistaken identity need not present evidence of the intent or purpose of an unknown person in entering the transaction, but should present evidence of the identity theft or mistaken identity along with *some* evidence showing that the debt is consumer in nature." *Id.* I find that *Martin* strikes an appropriate balance of the applicable considerations in identity theft or mistaken identity cases under the FDCPA for the reasons set forth in *Davis*, *supra*:

> It would be absurd to hold that a plaintiff who is subject to debt collection efforts for an obligation that he does not owe is ineligible for the FDCPA's protections simply because he cannot characterize the nature of that obligation. . . . Such a holding is absurd because it would fail to restrain debt collectors from suing anyone, willy-nilly, whose name was similar to that of an alleged debtor. It is difficult to conceive of a more unfair debt collection practice than dunning the wrong person.

41 F. Supp. 3d at 925 (italics and emphasis omitted). Thus, while it is unreasonable to demand that a plaintiff in such a case demonstrate the intent or purpose of an unknown perpetrator in incurring the debt, it is reasonable to require the plaintiff to at least present some evidence that the debt was consumer in nature.

*Martin* was decided at the summary judgment stage, but courts have applied its reasoning to test FDCPA claims on motions to dismiss. *See Solis v. American Express Nat'l Bank*, No. 5:23-cv-208, 2023 WL 5493858, at *6–8 (M.D. Fla. Aug. 18, 2023), *report and recommendation*

*adopted*, 2023 WL 5864426 (M.D. Fla. Sept. 11, 2023) (holding that the plaintiff's allegation that the defendants were consumer collection agencies, as opposed to commercial collection agencies, sufficed to allege that the fraudulent debts were consumer in nature); *Franks v. Achievable Sols., Inc.*, No. CV 20-0977, 2021 WL 3884281, at *3 (C.D. Cal. Jan. 29, 2021) (noting that the plaintiff's allegations that she was the victim of identity theft and that the third party used her personal identifying information in connection with the account for his personal purposes sufficed to state a FDCPA claim).

Although Morris alleges that he was the victim of identity theft, I conclude that his remaining allegations are insufficient to "nudge" his claims "across the line from conceivable to plausible" in order to avoid dismissal. *Twombly*, 550 U.S. at 570. That is, he alleges no fact suggesting that the debt was consumer in nature. He merely alleges that RCS is a debt collector and that a financial obligation was incurred to Credit One. (ECF No. 6 at PageID.38.) These bare allegations do not satisfy the applicable pleading standard. *Cf. Lewis v. Scott, Parnell & Assocs.*, No. 16-CV-290, 2016 WL 8078309, at *3 (M.D. Ala. Dec. 16, 2016) (holding that the plaintiff established a plausible FDCPA claim by her allegations that the obligation was a credit card debt and was a relatively small amount, the defendant was a "debt collector" as defined under the FDCPA, the alleged debtor was an individual rather than a business, and the address associated with the account was a residence).

To the extent that Morris argues in his response that RCS has the burden of proving that the debt was in the nature of a consumer loan, this argument lacks merit. As *Martin* and *Evenson* make clear, a plaintiff asserting an FDCPA claim bears the burden of demonstrating that the debt falls within the FDCPA's ambit, even when the plaintiff alleges he is a victim of identity theft. *See*

8

*Martin*, 192 F. Supp. 3d at 1306; *Evenson*, 2015 WL 3466936, at *3. Therefore, I recommend that the Court grant RCS's motion to dismiss.

    **B.**    **Amendment**

Morris concludes his response by requesting leave to file a second amended complaint. A court acts well within its discretion in ignoring this type of request because "a request for leave to amend within a responsive brief is not sufficient to properly place the issue of amendment before a district court." *Cox v. Blue Cross Blue Shield of Mich.*, 166 F. Supp. 3d 891, 900 n. 6 (E.D. Mich. 2015) (citing *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000)). Moreover, Morris has not offered a proposed amended pleading for the Court to review. Nonetheless, it is well established in the Sixth Circuit that district courts have discretion to dismiss a complaint or to grant the plaintiff the opportunity to amend. *See United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). In cases "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id.* (citing *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993)). While Morris has amended his complaint once as a matter of right, he has not been allowed an opportunity to amend his complaint to cure pleading deficiencies highlighted by a motion to dismiss—in this case, providing facts indicating that the debt was in the nature of a consumer debt. Accordingly, I recommend that if the Court adopts my recommendation that the amended complaint fails to state a claim, it also grant Morris an opportunity to amend his complaint before his action is dismissed with prejudice.

### IV. Conclusion

For the foregoing reasons, I recommend that the Court **grant** RCS's Motion to Dismiss (ECF No. 12), but also *sua sponte* grant Morris leave to file an amended complaint consistent

with the foregoing within 14 days following entry of an order addressing this Report and Recommendation.

Dated: September 25, 2023  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).