UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOAH MORRIS,

        Plaintiff,                                      Hon. Robert J. Jonker

v.                                                  Case No. 1:23-cv-751

RESURGENT CAPITAL SERVICES,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Pursuant to the Court's October 19, 2023 Order (ECF No. 17), on November 6, 2023, pro se Plaintiff Noah Morris filed a second amended complaint (ECF No. 18) seeking to cure pleading deficiencies in his amended complaint identified in the September 15, 2023 Report and Recommendation. (ECF No. 16.) As with his prior complaints, Morris alleges that Defendant Resurgent Capital Services (RCS) violated several provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* He also alleges, for the first time, a claim under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* RCS filed its answer on November 20, 2023. (ECF No. 19.)

Presently before me is RCS's Motion for Judgment on the Pleadings as to the Second Amended Complaint (ECF No. 22), to which Morris responded.[1] (ECF No. 24.) For the reasons that follow, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** RCS's motion and dismiss Morris's second amended complaint with prejudice.

---

[1] RCS did not file a reply.

## I. Background[2]

Morris alleges that he incurred a debt to Credit One and that Credit One subsequently sold, assigned, or transferred the debt to LVNV Funding. In turn, LVNV Funding retained RCS to service the account and collect the debt.[3] (ECF No. 18 at PageID.99.)

On January 11, 2023, acting as a debt collector, RCS sent Morris a letter concerning the debt that he owed to LVNV Funding. (ECF No. 1-1 at PageID.12; ECF No. 18 at PageID.99; ECF No. 18-2 at PageID.118.) On February 10, 2023, Morris sent RCS a letter seeking information concerning the debt. (ECF No. 18 at PageID.99–100; ECF No. 18-1 at PageID.112.) On February 15, 2023, RCS accessed Morris's Experian consumer report without his consent or permission. (ECF No. 18 at PageID.101.) On February 27, 2023, RCS sent Morris a letter enclosing an account summary providing verification of the debt. (ECF No. 18-2 at PageID.116.)

In late February 2023, Morris "expressed concern that the obligation . . . [was] not his, by phone call to [RCS]." (ECF No. 18 at PageID.102.) RCS responded by sending three letters dated the same date (February 24, 2023), requesting additional information to validate his assertion that the debt was incurred due to identity theft or fraudulent charges. (*Id.*; ECF No. 18-2 at PageID.117.) Morris does not allege that he provided any such information to RCS.

On April 15, 2023, Morris sent a letter to RCS requesting that it cease further communication with him and stating that he had not "received any validation as requested." (ECF No. 18 at PageID.103; ECF No. 18-3 at PageID.120–21.) On April 21 and May 10, 2023, RCS

---

[2] The following facts are taken from the second amended complaint and its attached exhibits, as well as exhibits in the record attached to prior pleadings.

[3] Previously, Morris alleged that the debt was incurred by an unknown third party. (ECF No. 6 at PageID.38.)

2

sent Morris letters providing verification of the debt. (ECF No. 18 at PageID.103–04; ECF No. 18-4 at PageID.122–23.)

On May 10, 2023, Morris filed a complaint with the Michigan Attorney General and a Consumer Financial Protection Bureau complaint against LVNV Funding regarding RCS's alleged violations. On May 25, 2023, Morris received an answer from RCS to his second CFPB complaint. Despite his prior request to cease contact, he contacted the RCS and spoke to someone in the compliance department. As a result of the call, the information RCS and/or LVNV Funding furnished was deleted from his credit report. (ECF No. 18 at PageID.104–06.)

## II.  Motion Standard

In deciding a motion under Rule 12(c), a court applies the same standard applicable to motions under Rule 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the allegations therein in a light most favorable to the plaintiff to determine whether they state a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). When considering a Rule 12(b)(6) motion, the court must dismiss a claim unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a

3

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

Because Morris is proceeding pro se, the Court must construe his pleading more liberally than it does for pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf" *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). To require otherwise "would not only strain judicial resources . . . but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  Discussion

#### A.  FCRA Claim

In Count I, Morris alleges that RCS violated the FCRA, 15 U.S.C. § 1681b, by "not having [a] permissible purpose to compel payment by using and obtaining [his] nonpublic personal

4

information/credit report." (ECF No. 18 at PageID.107.) The FCRA provides a private right of action for both negligent and willful violations of the Act. 15 U.S.C. §§ 1681n(a), 1681o(a). The FCRA encompasses three classes of entities: "(1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004). Morris alleges that RCS was a user of his credit report acting as a debt collector with respect to the collection of his alleged debt. (*Id.* at PageID.98, 107.) To state a claim, Morris must establish: (1) there was a "consumer report" as defined by the Act; (2) RCS obtained or used it; and (3) it lacked a permissible purpose for obtaining or using it. *See Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 938 (S.D. Ohio 2008) (citing *McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006)).

RCS does not dispute the first two elements, but it contends that Morris's claim fails on the last element because it had a permissible purpose—debt collection. Indeed, Section 1681b provides that a credit report may be used for "review or collection of an account." 15 U.S.C. § 1681b(a)(3)(A). Here, Morris pleads facts showing that RCS had a permissible purpose for using the credit report. *See Goldman v. Consumers Credit Union*, No. 1:16-v-1372, 2017 WL 1404862, at *4 (W.D. Mich. Apr. 20, 2017) ("Plaintiff further claims that CCU, through Defendant Baker, was attempting to collect the debt from Plaintiff. Debt collection is a permissible purpose for obtaining a consumer's credit report."); *Carlisle v. Portfolio Recovery Assocs., Inc.*, 1:13-CV-209, 2014 WL 4829023, at *2 (E.D. Tenn. Sept. 29, 2014) (holding that the plaintiff failed to state a claim under the FCRA because his allegation that the defendant was attempting to collect two non-existent established that the defendant had a permissible purpose under Section 1681b). The Sixth Circuit has recognized that a collection agency seeking to collect a debt has a permissible purpose for requesting a credit report even after the debtor contests the debt in writing. *Lusk v. TRW, Inc.*,

5

No. 97-4127, 1999 WL 96721, at *1 (6th Cir. 1999). Moreover, a debt collector seeking to collect a debt has a permissible purpose to obtain a credit report even if later discovers that the person from whom it seeks to collect the debt does not own the account. *See Beckstrom v. Direct Merchs. Credit Card Bank*, No. 04-1351, 2005 WL 1869107, at *3 (D. Minn. Aug. 5, 2005).

Because Morris admits that RCS had a permissible purpose, Count I should be dismissed.

**B.     FDCPA Claim**

To state a claim for violation of the FDCPA, a plaintiff must allege that: (1) he is a "consumer" as defined by the Act; (2) the debt arises out of a transaction which is "primarily for personal, family or household purposes;" (3) the defendant is a "debt collector" as defined by the Act; and (4) the defendant violated one of the provisions of the Act. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)). The Sixth Circuit employs the "least-sophisticated-consumer" test for determining whether a debt collector's act or practice is deceptive. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).

**1.     Counts III–V, VII–X**

Section 1692d prohibits conduct amounting to harassment or abuse of the debtor. 15 U.S.C. § 1692d. In Count III, Morris alleges that RCS violated Section 1692d(1), which prohibits "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." In Count IV, Morris alleges that RCS violated Section 1692d(2), which prohibits "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader." Counts III and IV are subject to dismissal because the second amended complaint is devoid of any allegation showing that RCS harassed or abused Morris in general or specifically threatened violence or physical harm to Morris, his reputation, or property or used obscene or profane language. In fact, these counts simply mimic the statutory language.

6

Section 1692e(10) prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any debt in general, and sets forth various specific prohibited acts. 15 U.S.C. § 1692e. In Count V, Morris alleges that RCS violated Section 1692e(2)(A), which prohibits a debt collector from making a false representation regarding "the character, amount, or legal status of any debt." In Count VII, Morris alleges that RCS violated Section 1692e(8), which prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false." In Count VII, Morris alleges that RCS violated Section 1692e(10), which prohibits a debt collector from "us[ing] . . . any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." In Count IX, Morris alleges that RCS violated Section 1692e(14), which prohibits a debt collector from "us[ing] . . . any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

As with the claims under Section 1692d, the second amended complaint contains no factual allegations to support any of these violations. Instead, the foregoing counts largely mimic the statutory language without providing any factual support. Moreover, the exhibits Morris attaches to his pleading refute any claim that RCS used a business or company name other than its own. Off the bat, RCS identified LVNV Funding LLC as the owner of the debt and itself as the servicer. (ECF No. 18-2 at PageID.118.) Thereafter, RCS always used its own name. (*Id.* at PageID.116, 117, 122, 123.) Thus, these counts are also subject to dismissal.

In Count X, Morris alleges that RCS violated Section 1692b, which governs a debt collector's communications with third parties for the purpose of acquiring location information about the consumer. 15 U.S.C. § 1692b. In particular, he alleges that RCS violated subsection (2),

7

which provides that, in communications with third parties, a debt collector shall "not state that such consumer owes any debt." Again, the second amended complaint is devoid of a single factual allegation explaining when and how RCS violated this provision. Morris simply alleges that RCS obtained location information "without consent," but nothing in the statute requires a debt collector to obtain the consumer's consent before seeking to acquire location information. This count should also be dismissed.

### 2. Count II

In Count II, Morris alleges that RCS violated Section 1692c(c). That provision states:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c(c). Morris invoked this provision in his April 15, 2023 letter/notice. (ECF No. 18-3 at PageID.120–21.)

RCS contends that, although Morris requested it to cease communication with him pursuant to Section 1692c(c), it is obligated under the Fair and Accurate Credit Transaction Act (FACTA) and Regulation V, as a furnisher of information, to conduct a reasonable investigation after receiving a direct dispute notice from a consumer regarding, for example, identity theft or fraud against the consumer, or other matters, and report the results of the investigation to the consumer. 15 U.S.D. § 1681s-2(a)(8)(E); 16 C.F.R. 660.4(e)(3); 12 C.F.R. § 1022.43(e)(3). RCS notes that a debt collector's obligation to cease communication with the consumer under Section 1692c(c) may

8

conflict with its obligations under FACTA. RCS cites a June 23, 2009 Federal Trade Commission (FTC) formal advisory opinion addressing the intersection of these two obligations and concluding that a debt collector does not violate the FDCPA's cease communication provision if the consumer directly disputes information, and the debtor collector's communication is limited to conveying the results of the investigation or the collector's belief that the dispute is frivolous or irrelevant. *See* http:// www.ftc.gov/os/2009/07/P064803facta-adop.pdf. *See also Gannon v. IC Sys., Inc.*, No. 09-60302, 2009 WL 2075244, at *4 (S.D. Fla. July 13, 2009) (citing Federal Trade Commission June 23, 2009 advisory opinion concluding that a debt collector does not violate Section 1692c(c) when responding to the consumer under FACTA). RCS contends that since Morris raised disputes in his communications with RCS, including his April 15, 2023 letter/notice citing RCS's "erroneous reporting," it was obligated to respond to those disputes and contends that the letters it sent to Morris after he requested RCS to cease communications were made for the purpose of responding to the disputes as required by FACTA. (ECF No. 22 at PageID.147–49.)

Morris responds that the April 21, 2023 and May 10, 2023 letters from RCS were not limited to responding to the dispute because they contained the following phrase required in communications by debt collectors to consumers pursuant to 15 U.S.C. § 1692e(11): "This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector." He argues that RCS should have used language similar to that in the example he attaches to his response, which states: "This communication is from a debt collector, but this is not an attempt to collect a debt." (ECF No. 24-2 at PageID.185.) Morris further contends that the situation at hand is different than that described in the FTC advisory opinion because he did not dispute information *after* invoking his cease communication right under Section 1692c(c). Rather, he notes that his April 15, 2023 letter was the last letter he sent to RCS.

9

Finally, he argues his letter did not combine a dispute with a "cease communication" demand because his letter made clear that he was requesting that RCS cease all further communication with him unless it was removing furnished information from his credit report or answering his affidavit. (ECF No. 24 at PageID.160–65.) Given the language of the April 21, 2023 and May 10, 2023 letters, it is questionable, at the least, whether RCS sent them to report the results of an investigation of a dispute by Morris as to information furnished for his credit report pursuant to FACTA because the letters mention an "inquiry," not a "dispute." (*Compare* ECF No. 18-2 at PageID.117 *with* ECF No. 18-3 at PageID.122, 123.)

Nonetheless, in addition to invoking the cease communication provision in his April 15, 2023 letter/notice, Morris also claimed that he had "not received any validation" as requested and accused RCS of failing to comply with 15 U.S.C. § 1692g. Pursuant to this section, if a consumer notifies the debt collector "that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt" and mail a copy of such verification to the consumer. 15 U.S.C. § 1692g(a)(4). Courts have held that under these circumstances—where the consumer directs the debt collector to cease communication but disputes the debt and/or requests verification—the consumer is deemed to have waived any claim under Section 1692c(c) that a subsequent response providing verification violated the consumer's cease communication directive. *See Duarte v. Midland Funding, LLC*, No. 17 C 5061, 2019 WL 978495, at *4 (N.D. Ill. Feb. 27, 2019) (finding that "by including language both disputing the debt and refusing to pay, Duarte waived any claim under § 1692c(c) that a subsequent response from MCM violated the directive to cease communications"); *Crumel v. Kross, Lieberman & Stone, Inc.*, No. 5:14-CV-80, 2015 WL 1565432, at *4–5 (E.D.N.C. Apr. 8, 2015) (finding that the "plaintiff's request for verification constituted a waiver of his cease communication directive, but only with respect to the verification

information"); *Marino v. Hoganwillig, PLLC*, 910 F. Supp. 2d 492, 496 (W.D.N.Y. 2012) ("To hold [that a debt collector could not send a verification of the debt] would force HoganWillig into a frozen state where it could not seek to collect the debt because compliance with Section 1692g(b) would violate Section 1692c(c).").

Here, Morris not only stated that he had not received validation, but notified RCS that its failure to provide validation violated Section 1692g. (ECF No. 18-3.) As the court observed in *Duarte*, "Duarte's letter created the potential for an FDCPA violation regardless of whether MCM responded or not." 2019 WL 978495, at *4. The same is true here. Morris's statements in his notice/letter thus amount to a limited waiver to the extent that he invited RCS to provide verification as required in 15 U.S.C. § 1692g(a). The April 21 and May 10 letters did not exceed the scope of the waiver; neither letter demanded payment or that Morris contact RCS to discuss payment options. Although the letters contained the language set forth in 15 U.S.C. § 1692e(11), the least sophisticated consumer would not understand that the letter, read as a whole, exceeded the scope of the waiver.

### 3. Count VI

In Count VI, Morris alleges that RCS violated 15 U.S.C. § 1692e(5), which prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." (ECF No. 18 at PageID.108.) Pointing to the January 11, 2023 statement Morris attaches to his second amended complaint, RCS contends that this communication does not state that Morris would be subject to a lawsuit, as Morris alleged. (ECF No. 22 at PageID.150 (citing ECF No. 18 at PageID.99; ECF No. 18-2 at PageID.118).) As Morris notes in his response, however, RCS sent a letter to Morris dated January 11, 2023, which informed Morris that if he did not establish a repayment plan with RCS before the end of the six-month prelegal track, the matter "may be forwarded to an attorney to review for a possible lawsuit." (ECF No. 24 at PageID.174;

ECF No. 24-5 at PageID.189.) Morris had attached this letter to his original complaint. (ECF No. 1-1 at PageID.12.)

Even considering the statement in the letter Morris cites, he fails to state a claim. To allege a violation of Section 1692e(5), a plaintiff must show: (1) "from the perspective of the least sophisticated consumer, the debt collector threatened to take action and (2) whether the allegedly threatened action could not legally be taken or was not intended to be taken." *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 14-CV-7539, 2016 WL 1274541, at *4 (E.D.N.Y. Mar. 31, 2016) (quoting *Douyon v. New York Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 258–59 (E.D.N.Y. 2012)); *see also Medrano v. Great Mercantile Agency, Inc.*, No. 1:17-cv-1392, 2018 WL 3105026, at *2 (E.D. Cal. June 20, 2018). A letter or notice threatens legal action if it "communicate[s] that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." *Combs v. Direct Mktg. Credit Servs., Inc.*, No. 98-2857, 1998 WL 911691, at *2 (7th Cir. Dec. 29, 1998) (quoting *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill., 1998)). First, the statement in the letter does not convey that legal action was imminent or the decision had already been made. The letter simply said that RCS may forward the account to an attorney to review for a possible lawsuit. A letter that merely suggests that the debt collector may consider legal action does not threaten legal action. *See Stephenson v. Midland Credit Mgmt.*, No. 4:21-cv-20, 2021 WL 3726623, at *4 (D. Utah Aug. 23, 2021) (letter stating, "If you do not reply, we plan on sending your account to an attorney in the state of Utah" and that a lawsuit would commence only "if the attorney determines there is cause for a suit," did not indicate that legal action was imminent, particularly in light of the letter's invitation to call to discuss available options); *Sorel v. Capital One Servs., LLC*, No. 3:11-cv-703, 2012 WL 3596487, at *6 (D. Conn. Aug. 20, 2012) (defendant's statement that the account had been "pre-qualified by Capital One as

lawsuit eligible" would convey to the least sophisticated consumer that legal action was a mere possibility rather than imminently forthcoming); *Knowles v. Credit Bureau of Rochester*, No. 91-CV-14, 1992 WL 131107, at * 1–2 (W.D.N.Y. May 28, 1992) (holding that the statement, "failure to pay will leave our client with no choice but to consider legal action" did not violate section 1692e(5) by threatening legal action, because "at most, the language . . . threatened that the creditor will have to consider legal action" and therefore "no action of any kind is threatened by defendant collection agency"). Here, RCS's letter merely said that the matter "*may* be forwarded to an attorney for a possible lawsuit." In other words, nothing was imminent. Moreover, in light of the letter's statement that the account would be removed from the prelegal track if Morris established a payment arrangement, the least sophisticated consumer would not interpret the letter as threatening imminent or certain legal action.

This claim also fails because Morris does not allege why RCS could not legally file a lawsuit. That is, he does not allege, for example, that such an action would be time-barred or that LVNV Funding had released a claim on the account. Given Morris's admissions in his second amended complaint that: (1) he incurred a debt to Credit One; (2) LVNV obtained the debt by purchase, assignment, or transfer; and (3) RCS services the debt for LVNV, there is no basis to conclude that RCS/LVNV was legally prohibited from initiating suit. Accordingly, Count VI is subject to dismissal.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** RCS's Motion for Judgment on the Pleadings (ECF No. 22) and **dismiss** the second amended complaint **with prejudice**.

Dated: March 4, 2024                                        /s/ Sally J. Berens            
                                                                        SALLY J. BERENS
                                                                        U.S. Magistrate Judge

13

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).